UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────┐
│ SHAUN GRAY,                      │
│                                  │
│         Plaintiff,               │
│                                  │
│    -v-                           │
│                                  │
│ PARAMOUNT GLOBAL, et al.,        │
│                                  │
│         Defendants.              │
└─────────────────────────────────┘
```

25-cv-3484 (JSR)

OPINION & ORDER

JED S. RAKOFF, U.S.D.J.:

Before the Court are the parties' cross-motions for summary judgment pursuant to Rule 56. Fed. R. Civ. P. 56; see ECF Nos. 76 ("Defendants' MSJ"); 85 ("Plaintiff's MSJ"). Defendants Paramount Global, Paramount Pictures Corporation, and Paramount Streaming Services, Inc. (collectively, "Paramount") argue that plaintiff Shaun Gray's remaining claim for copyright infringement must be dismissed for several reasons, including lack of protectable copyright in an infringing derivative work. See generally Defendants' MSJ. In turn, Gray presses that Paramount's claims of federal copyright infringement and common law fraud must be dismissed because they are untimely. See generally Plaintiff's MSJ. Gray also argues that Paramount's fraud claim independently fails on the merits. Id.

For the foregoing reasons, the Court grants Paramount's motion, and denies Gray's motion.

I.    Background

1

While the parties have submitted lengthy "Rule 56.1 statements," see S.D.N.Y. Rule 56.1, the facts material to their cross-motions for summary judgment are largely undisputed. Where the facts are genuinely in dispute, the Court assumes the opponent's version of the facts as specified below.

In 1986, defendant Paramount released the motion picture Top Gun. ECF No. 87 ¶ 1. The film follows a cohort of young naval aviators as they train at the U.S. Navy's Fighter Weapons School, also known as Top Gun. ECF No. 86 ¶ 1; ECF No. 111 ¶ 1. Paramount duly copyrighted the entirety of the film and its screenplay. ECF No. 103, Exh. A.

Some years later, Paramount began producing a sequel to the film, titled Top Gun: Maverick. ECF No. 87 ¶ 2. As part of the sequel's production, Paramount hired writers, including Eric Singer, and a director, Joseph Kosinski, pursuant to written "work made for hire" agreements.[1] Id. Paramount authorized Singer and Kosinski to use Paramount's preexisting Top Gun: Maverick-related materials, including the original Top Gun film, to develop the screenplay. Id. ¶ 3. As part of Singer's agreement with Paramount,

---

[1] A "work made for hire" is a "work prepared by an employee within the scope of his or her employment" or "a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work . . . if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire." 17 U.S.C. § 101.

he agreed that his screenplay draft would be "solely written" by him. ECF No. 86 ¶ 11.

Plaintiff Shaun Gray is Eric Singer's cousin and a long-time writing partner of Joseph Kosinski. ECF No. 87 ¶ 10. Gray alleges that on June 4, 2017, Singer texted Gray and asked him to join in writing the Top Gun: Maverick screenplay that would eventually become the "Singer draft," that is, the screenplay Singer submitted to Paramount. Id. ¶ 11. Gray alleges that he played a significant role in drafting this screenplay, such as participating in story meetings with Singer and Kosinski and discussing notes received from producers. Id. ¶¶ 15-23. On July 16, 2017, Gray delivered an outline to Singer, based on meetings with Singer and Kosinski. ECF No. 111 ¶ 12 (Gray Response). Singer submitted his final version of the screenplay to Paramount on November 3, 2017. ECF No. 86 ¶ 13; ECF No. 111 ¶ 13 (materially undisputed).

Throughout this period, Paramount was not directly aware of Gray's role in helping draft the script. ECF No. 87 ¶ 25. Gray urged Singer to disclose his participation to Paramount and the Writers Guild of America, but Singer never did so. Id. Paramount released Top Gun: Maverick on May 27, 2022. The film credits several individuals, including Singer -- but not Gray -- with credit for the screenplay. Id. ¶ 26. Paramount copyrighted both the film and its screenplay. ECF No. 111 ¶¶ 913-14.

Gray watched the trailer for Top Gun: Maverick before the film was released in theaters. ECF No. 86 ¶ 53; ECF No. 111 ¶ 53. He noted that scenes in the trailer seemed to feature portions of the script he had (purportedly) drafted. ECF No. 86 ¶ 54; ECF No. 111 ¶ 54. In January 2023, after the film's release, Gray informed Paramount of his role in the Top Gun: Maverick script (the "Gray Narrative"). ECF No. 86 ¶ 121; ECF No. 111 ¶ 121 (Gray disputes that this was the first time Paramount learned about Gray's role, but it is undisputed that Gray at least informed or re-informed Paramount of his role in January 2023). In 2024, Gray registered a copyright of the scenes from Top Gun: Maverick that he claims to have drafted (the "Gray Scenes"). ECF No. 111 ¶¶ 915, 918.

In April 2025, Gray filed the instant suit against three Paramount entities: Paramount Global and its subsidiaries Paramount Pictures Corporation and Paramount Streaming Services Inc. See ECF No. 1. In his complaint, Gray claimed copyright infringement and sought a declaration of joint authorship and joint ownership of the copyrights of both the screenplay and Top Gun: Maverick. Paramount moved to dismiss both claims with prejudice. The Court granted in part and denied in part the motion to dismiss, dismissing the joint ownership claims but preserving Gray's copyright infringement claim. ECF No. 40.

In early September 2025, Paramount filed its amended answer to Gray's remaining claim and brought two counterclaims against

4

Gray, alleging copyright infringement and common law fraud. ECF No. 56. Gray moved to dismiss shortly thereafter, see ECF No. 57, a motion the Court denied, see ECF No. 72. Following discovery, the instant cross-motions for summary judgment were filed and briefed, and the Court heard oral argument on December 19, 2025.

## II.  Discussion

### A. Paramount's Motion for Summary Judgment

Paramount moves for summary judgment on Gray's remaining claim of copyright infringement, arguing that Gray's infringement claim must be dismissed for various reasons, one of which is that Gray's own copyright is invalid. Because the Court agrees with that argument, it need not address Paramount's other arguments.

For a copyright claim to succeed, a plaintiff must allege ownership of a valid copyright and defendant's copying of constituent elements of plaintiff's work that are original. See Fonar Corp. v. Domenick, 105 F.3d 99, 103 (2d Cir. 1997).[2] However, where, as here, the plaintiff has duly registered his purported copyright with the Copyright Office, the burden of proving invalidity is on the defendant. Specifically, under 17 U.S.C. § 410(c), a certificate of registration "constitute[s] prima facie evidence of the validity of the copyright" and of the facts stated

---

[2] Unless otherwise indicated, all case citations and quotations omit internal alterations, brackets, citations, ellipses, emphases, quotations, and quotation marks.

in the certificate when the registration issues before a suit. Hamil Am. Inc. v. GFI, 193 F.3d 92, 98 (2d Cir. 1999). "The party challenging the validity of the copyright has the burden to prove the contrary." Id.

Here, as noted, Gray has registered the "Gray Scenes" with the Copyright Office, so the presumption presumptively applies. Paramount offers arguments as to why the presumption should not apply in light of Paramount's own copyright of the Top Gun: Maverick film and its script, but the Court, once again, need not reach this dispute and will assume for the purposes of Paramount's motion that Gray's copyright is presumptively valid. However, such a presumption is not irrebuttable. And Paramount contends that undisputed facts show that Gray's copyright is invalid as a matter of law. Paramount argues that this is true for three independent reasons: that Gray composed his scenes as a "work made for hire" for Singer; that the Gray Scenes are not independently copyrightable; and that the Gray Scenes are infringing derivative works. The first of these arguments raises at least disputed questions of fact that cannot be resolved on summary judgment, and the second of these arguments was already essentially rejected by the Court in its decision on Paramount's motion to dismiss. See ECF No. 40 at 18-19. This is not to say, however, that either of these arguments is without force.

As to the first argument, Gray, as early as 2015, entered into an employment contract with Singer and Singer's company, named Bullsh!t Artists, that recites that Gray "acknowledge[s] and agree[s] that [Gray] will not acquire any rights of any kind or nature in or to any materials of any kind or nature that [he] assist[s] Singer/Bullsh!t Artists with . . . whether verbal or written." ECF No. 84, Exh. 45. The agreement further states that Singer/Bullsh!t Artists will be the "sole and exclusive owner of any and all such Materials." Id. Gray, however, asserts that this agreement did not govern the work he did that led to the Gray Scenes, and he has offered evidence that, while largely contradicted, is sufficient to make this a jury question.

As for the second argument, the Court, as noted, resolved this adversely to Paramount in the decision partially denying the motion to dismiss, and Paramount's new version of its argument does not rest on factual disputes now resolved, but, rather, in effect, is a request that the Court reconsider its previous interpretation of the law governing this issue, which the Court declines to do.

But Paramount's third argument for the invalidity of Gray's copyright -- based on undisputed facts showing that the Gray Scenes are themselves infringing derivative works that cannot be copyrighted -- is a winner. As a general rule, "unauthorized derivative works are typically afforded no copyright protection

7

because they unlawfully infringe the exclusive rights of the original author." Keeling v. Hars, 809 F.3d 43, 48 (2d Cir. 2015). As previously noted, the original film, Top Gun, was fully copyrighted by Paramount, and it is self-evident that the Gray Scenes are materially based on the Top Gun universe, including characters, settings, and plot devices, as one would expect of such a sequel.

In response, Gray offers three arguments. First, he argues that, in a different case, Paramount argued that much of the Top Gun universe is unprotected, and, consequently, Paramount is judicially estopped from making a different argument here. However, a party invoking judicial estoppel must show that (1) his adversary "advanced an inconsistent factual position in a prior proceeding, and (2) the prior inconsistent position was adopted by the first court in some manner." AXA Marine & Aviation Ins. (UK) Ltd. v. Seajet Indus. Inc., 84 F.3d 622, 628 (2d Cir. 1996). "[T]here must be a true inconsistency between the statements in the two proceedings. If the statements can be reconciled there is no occasion to apply an estoppel." Simon v. Safelite Glass Corp., 128 F.3d 68, 72-73 (2d Cir. 1997).

Here, Gray's argument relies on Paramount's position in Yonay v. Paramount Pictures Corp., 2024 WL 2107721 (C.D. Cal. Apr. 5, 2024), aff'd, -- F.4th --, 2026 WL 17168 (9th Cir. Jan 2, 2025). But in Yonay, the court found only that the Top Gun: Maverick film

8

and a magazine article named "Top Guns" were not substantially similar. Id. Indeed, the Yonay opinion does not even indicate that Paramount ever argued that the Top Gun universe was entirely or mostly unprotected, and Gray has utterly failed to direct this Court to a particular filing in that docket where Paramount makes an argument to that effect.

Second, Gray contends that because Singer and Kosinski were hired by Paramount to work on Top Gun: Maverick, and they in turn hired Gray to work on the script, he had an implicit right to use material from Top Gun. But this argument completely ignores the question of whether he had the right to assert independent ownership and copyright over writings derived from these materials.

Indeed, under their own contracts with Paramount, neither Singer nor Kosinski had any right to copyright what they produced for Top Gun: Maverick, let alone the authority to grant such an unusual right to Gray. And while Gray argues that there is at least a jury question as to whether Singer and Kosinski could be perceived as having "apparent authority" to do so, apparent authority "arises from the written or spoken words or any other conduct of the principal" that would convince a reasonable person that such authority was held and was being conveyed. Minskoff v. Am. Express Travel Related Servs. Co., 98 F.3d 703, 708 (2d Cir. 1996). Here, Gray is unable to point to a single word or action by

Singer or Kosinski that would appear to a reasonable person to be conveying to Gray a right to independently copyright his derivative work, let alone their authority to convey such a right that they themselves did not possess.

Finally, Gray argues that even some derivative works may have elements so distinct and original that at least those features may be copyrightable. See, e.g., Poppington LLC v. Brooks, 2021 WL 3193023 (S.D.N.Y. July 27, 2021); Keeling v. New Rock Theater Prods., LLC, 2011 WL 1899762, at *1 (S.D.N.Y. May 17, 2011). But none of these cases remotely involves the kind of sequel here at issue where "the characters were lifted lock, stock, and barrel from the prior . . . movies." Anderson v. Stallone, 1989 WL 206431, at *8 (C.D. Cal. 1989).

For example, in the recent case of Wozniak v. Warner Bros. Entertainment, Inc., 726 F. Supp. 3d 213 (S.D.N.Y. 2024), Mr. Wozniak wrote a story that depicted an aging Batman working with the police commissioner James Gordon to battle the Riddler in Gotham. Id. at 223. After copyrighting his story and unsuccessfully pitching it to Warner Brothers, plaintiff saw a Batman film that he asserted "copied major elements of his Story," and on this basis, sued Warner Brothers for copyright infringement. Id. at 225-26. Warner Brothers moved for summary judgment, asserting that the plaintiff had no valid copyright in the story because of his unauthorized use of the Batman character and other elements of the

Batman universe derived from prior films copyrighted by Warner Brothers. Id. at 237. Judge Engelmayer agreed, finding that the preexisting material "pervade[d] the entire Story" since "[t]he Story's entire premise and plot center[ed] on Batman." Id. at 238.

Like the plaintiff in Wozniak, Gray is a writer who indisputably based his entire script on existing material, including Top Gun characters, settings, and plot devices. Like Wozniak, the work represents Gray's re-capturing of the Top Gun universe in ways that entirely pervade his scenes. Gray's copyright is therefore invalid. And even if one could somehow point to something in the Gray Scenes that is arguably distinct from the Top Gun universe, the derivative features still supply the entire context and foundation in ways that totally invade Paramount's prior copyright of Top Gun. Needless to say, the Copyright Act "most certainly precludes the author of an unauthorized infringing derivative work from suing the author of the work which he has already infringed." Anderson v. Stallone, 1989 WL 206431, at *11 (C.D. Cal. Apr. 25, 1989). The Court, therefore, concludes that Gray's copyright infringement claim must be dismissed.

B. Gray's Motion for Summary Judgment

Paramount brings counterclaims of copyright infringement and common law fraud. Predicated, in effect, on the derivative nature on the Gray Scenes discussed above, Paramount's copyright infringement counterclaim alleges that, since any work Gray

purportedly performed on Singer's draft for Paramount would have unlawfully derived from Paramount's copyrights in Top Gun and Top Gun: Maverick, it is entitled to damages. As for Paramount's fraud counterclaim, Paramount alleges that Gray devalued Paramount's intellectual property by intentionally concealing from Paramount that he was writing scenes and making contributions to Singer's draft of the Top Gun: Maverick screenplay.

In response, Gray asserts that both counterclaims are time-barred and that the common law fraud claim additionally fails on the merits. The Court considers these arguments in turn.

Gray first contends that Paramount had imputed knowledge of Gray's role in writing portions of the Top Gun: Maverick screenplay beginning in 2017 through Singer and Kosinski, who he argues are Paramount's agents. Because copyright infringement claims are subject to a three-year statute of limitations, 17 U.S.C. § 507(b), Gray argues that Paramount's copyright counterclaim, filed in September 2025, is untimely.

Neither party disputes that Gray has presented evidence that both Singer and Kosinski knew about Gray's participation in helping write Top Gun: Maverick beginning when they allegedly invited Gray to participate in 2017. But Singer and Kosinski's respective contracts with Paramount each contain an express disclaimer that "[n]othing herein contained shall . . . constitute either party the agent of the other." ECF No. 82, Exhs. 4 at 14, 5 at 14. Courts

12

generally enforce such disclaimers when they are "express and unambiguous," as these are. See, e.g., Supreme Showroom, Inc. v. Branded Apparel Grp. LLC, 2018 WL 3148357, at *9 (S.D.N.Y. June 27, 2018). To overcome these disclaimers, Gray must point to evidence indicating that Paramount viewed or treated Singer and Kosinski as agents. While Gray has adduced some modest evidence to this effect -- e.g., Kosinski, as the director of Top Gun: Maverick, exerted significant control over the film's creative direction and screenplay in ways approved by Paramount producers -- it is hardly sufficient to show that he is entitled to summary judgment on his assertion that Paramount's copyright claim is untimely as a matter of law.

Gray also asserts that Paramount's common law fraud claim -- which has a six-year statute of limitations under applicable New York law -- is time-barred. He advances the same position here that the Court earlier rejected at the motion to dismiss stage. Specifically, Gray, contending that under New York law, accrual occurs when the claimant first acts to its detriment in reasonable reliance upon the alleged fraud, argues that this detrimental reliance occurred in 2017, when Paramount allegedly relied on Gray's purported silence to develop Singer's screenplay into what eventually became the script for Top Gun: Maverick. Id. Accordingly, Gray argues that the six-year statute of limitations for common law fraud claims has expired.

13

But as the Court explained in its Memorandum denying Gray's motion to dismiss Paramount's counterclaims, Paramount's fraud counterclaim did not accrue until "all the elements of tort claim could be alleged," ECF No. 72 at 6 (quoting VR Glob. Partners, L.P. v. Petroleos de Venezuela, 2004 WL 1514982, at *5 (S.D.N.Y. Apr. 8, 2024)). An essential element of a fraud claim is damage to the claimant caused by the alleged fraud. See Chanayil v. Gulati, 169 F.3d 168, 171 (2d Cir. 1999). Paramount's alleged "damage" is the cloud upon their title, which the Court found "would not have actualized until 2022, when the [Top Gun: Maverick] film was released." ECF No. 72 at 6. Accordingly, the fraud claim is likewise not untimely, or, at least, there remains a jury question as to its timeliness.

Gray's arguments on the merits of the fraud counterclaim similarly reiterate positions that this Court has previously rejected. Gray contends that the fraud counterclaim must be dismissed because (1) he had no duty to disclose information to Paramount absent a "transaction" between the parties, (2) there is no evidence of Paramount's reasonable reliance, and (3) there are no damages, either because of the "litigation privilege" or because there is no cloud on the Top Gun: Maverick title. The Court rejected each of these arguments at the motion to dismiss stage for reasons that remain applicable. See ECF No. 72 at 10-14.

14

On the duty to disclose, this Court earlier held that a duty to disclose arises "in the absence of a fiduciary relationship" if "one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." ECF No. 72 at 10-11 (citing Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V., 68 F.3d 1478, 1483 (2d Cir. 1995)). In the Court's decision denying Gray's motion to dismiss, it held that Paramount's allegations supported a claim that Gray had superior knowledge because he admitted to concealing his contributions to the Singer draft from Paramount. ECF No. 72 at 12. The evidence adduced as part of summary judgment is sufficient to make this at least a jury question.

Gray's further argument that a "transaction" must have occurred between the parties for a duty to disclose to arise is misplaced. The Court's earlier opinion explained that the duty to disclose "is not limited to the parties in privity of contract" where "nondisclosure would lead the person to whom the disclosure was or should have been made to forego action that might otherwise have been taken for the protection of that person." Id. (quoting Strasser v. Prudential Sec. Inc., 218 A.D. 2d 526, 527 (N.Y. App. Div. 1st Dep't, 1995)). Here, Paramount has introduced evidence that if it had known Gray was writing scenes, it would have, among other things, required Gray to sign a temporary work made for hire

15

agreement. Accordingly, no transaction was required for the duty to disclose to exist, or at least it remains a jury question.

There is also sufficient evidence for a jury to conclude that Paramount reasonably relied on Gray's alleged fraud. Because of Gray's silence, Paramount, among other things, never had the opportunity to have Gray sign any kind of employment agreement. Moreover, questions of whether a party reasonably relied on fraud are typically questions "reserved for the finder of fact and not usually amenable to summary judgment." Trainum v. Rockwell Collins, Inc., 2017 WL 2377988, at *14 (S.D.N.Y. May 31, 2017).

Gray's argument to the contrary is that Paramount's reliance was unreasonable because it could have interrogated third parties to discover Gray's writing role. But as Paramount notes, this question of due diligence puts the cart before the horse: because Paramount had a contract with Singer that he would be the sole author of the Singer draft, it had no reason to suspect the contract had been violated. ECF No. 115 at 22-23; see DDJ Mgmt., LLC v. Rhone Grp. L.L.C., 15 N.Y.3d 147, 154 (2010) ("[W]here a plaintiff has gone to the trouble to insist on a written representation that certain facts are true, it will often be justified in accepting that representation rather than making its own inquiry.").

Finally, Paramount has adequately claimed damages. Under New York law, a fraud claim must allege "out-of-pocket" damages

proximately caused by the alleged fraud and a resulting "cloud on title." Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 421 (1996). Paramount's counterclaim does so. ECF No. 56 ¶ 78.

In response, Gray urges the Court to apply New York's litigation privilege, which affords absolute immunity for oral and written statements made in connection with a proceeding before a court, to bar Paramount's fraud counterclaim. The Court earlier rejected the privilege's applicability for reasons that remain sound. ECF No. 72 at 8-10. Specifically, New York's litigation privilege does not clearly extend to claims beyond the defamation context, see, e.g., Sykes v. Mel Harris & Assocs., LLC, 757 F. Supp. 2d 413, 429 (S.D.N.Y. 2010); Michelo v. Nat'l Colleg. Student Loan Trust 2007-2, 419 F. Supp. 3d 668, 693 (S.D.N.Y. 2019), and Gray bears the burden of establishing that the privilege's applicability, see In re BM Brazil 1 Fundo de Investimento em Participacoes Multistrategia, 347 F.R.D. 1, 9 (S.D.N.Y 2024). Moreover, even if the litigation privilege extended to non-defamation contexts, it would not apply here because Paramount's claim arises from Gray's fraudulent concealment of his purported authorial role on the Top Gun: Maverick screenplay; it is not premised, as Gray assumes, on the filing of this lawsuit. ECF No. 115 at 23-24.

In a last-ditch effort to dismiss Paramount's fraud counterclaim, Gray now also raises the Noerr-Pennington doctrine. The doctrine immunizes parties from a suit that has as its basis the petitioning of the courts or other governmental entities. See Muddy Bites, Inc. v. Evergreen USA LLC, 2025 WL 2662959, at *3 (S.D.N.Y. Sept. 17, 2025). But again, Paramount's fraud counterclaim is not premised on the instant litigation or any earlier petition seeking screenwriting credit. Instead, it relies on Gray's admission that he worked on scenes for Top Gun: Maverick without Paramount's explicit permission, and that he hid this fact from Paramount. And in any event, the doctrine only protects "conduct . . . aimed at influencing decisionmaking by the government," Octane Fitness, LLC v. Icon Health & Fitness, Inc., 572 U.S. 545, 556 (2014), and does not apply to a dispute between private parties.

III. Conclusion

For the foregoing reasons, the Court grants Paramount's motion for summary judgment and denies Gray's motion for summary judgment. Specifically, Gray's claim for copyright infringement is dismissed, and Paramount's counterclaims of copyright infringement and fraud are preserved for trial.

The Clerk of Court is respectfully directed to close ECF Nos. 83 and 85.

SO ORDERED.

18

New York, NY
January 9, 2026

JED S. RAKOFF, U.S.D.J.