# 26-605

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

SHAUN GRAY, an individual,
*Plaintiff-Counter-Defendant-Appellant*,

v.

PARAMOUNT GLOBAL, a Delaware corporation; PARAMOUNT PICTURES CORPORATION, a Delaware corporation; PARAMOUNT STREAMING SERVICES INC., a Delaware corporation,
*Defendants-Counter-Claimants-Appellees*,

DOES 1 THROUGH 10, INCLUSIVE,
*Defendants-Appellees.*

On Appeal from the United States District Court for the Southern District of New York – No. 1:25-CV-03484-JSR

**FINAL FORM REPLY BRIEF FOR APPELLANT**

Marc Toberoff
*mtoberoff@toberoffandassociates.com*
TOBEROFF & ASSOCIATES, P.C.
23823 Malibu Road, Suite 50-363
Malibu, CA 90265
(310) 246-3333

*Attorneys for Appellant*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Plaintiff-Appellant Shaun Gray states that he is an individual.

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................1

ARGUMENT ........................................................................................3

I. SECTION 103(a) PROTECTS GRAY'S ORIGINAL EXPRESSION EVEN IF HIS USE WERE UNAUTHORIZED ........................................3

A. "Any Part Of" Means What It Says ........................................3

B. This Court's Cases Protect a Derivative Author's Original Contributions ........................................7

C. Whether *Top Gun* "Pervades" the Gray Scenes Is a Question of Fact for the Jury ........................................9

II. INDEPENDENTLY, A JURY COULD FIND THAT GRAY'S USE OF *TOP GUN* WAS AUTHORIZED ........................................12

A. The Question Is Permission to Use *Top Gun* Material, Not Permission for Gray to Own What He Wrote ........................................13

B. Actual Authority ........................................15

C. Apparent Authority ........................................18

D. Implied License ........................................19

III. PARAMOUNT'S ALTERNATIVE GROUNDS DO NOT SUPPORT AFFIRMANCE ........................................20

A. Equitable Estoppel Cannot Be Resolved Against Gray on Summary Judgment ........................................21

B. *Casa Duse* Does Not Reach Written Scenes Fixed and Registered by Their Author ........................................23

IV. THE JOINT-AUTHORSHIP CLAIM SHOULD NOT HAVE BEEN DISMISSED ON THE PLEADINGS WITH PREJUDICE ........................................25

A. Paramount's Defense of the Dismissal Assumes Away the Complaint's Agency Allegations ........................................25

B. The Denial of Leave to Amend Rested on Legal Error ......................27

CONCLUSION ......................................................................................30

CERTIFICATE OF COMPLIANCE ..........................................................31

CERTIFICATE OF SERVICE ...................................................................32

# TABLE OF AUTHORITIES

**_Cases_**

*Aalmuhammed v. Lee*,
202 F.3d 1227 (9th Cir. 2000) ....................24

*ABKCO Music, Inc. v. Sagan*,
50 F.4th 309 (2d Cir. 2022) ....................21

*ABS Ent., Inc. v. CBS Corp.*,
908 F.3d 405 (9th Cir. 2018) ....................14

*Adams v. Paramount Pictures Corp.*,
No. CV 08-3897, 2009 WL 10671572 (C.D. Cal. Jan. 6, 2009)....................10

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................10

*Anderson v. Stallone*,
No. 87-CV-0592, 1989 WL 206431 (C.D. Cal. Apr. 25, 1989)....................6, 8

*APP Grp. (Canada) Inc. v. Rudsak USA Inc.*,
No. 22-1965, 2024 WL 89120 (2d Cir. Jan. 9, 2024)....................29

*Baroni v. Port Auth. of N.Y. & N.J.*,
161 F.4th 48 (2d Cir. 2025) ....................28

*16 Casa Duse, LLC v. Merkin*,
791 F.3d 247 (2d Cir. 2015) ....................20, 23, 24

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) ....................26

*Childress v. Taylor*,
945 F.2d 500 (2d Cir. 1991) ....................26, 27, 28

*Citibank, N.A. v. Nyland (CF8) Ltd.*,
878 F.2d 620 (2d Cir. 1989) ....................18

*Cleveland v. Caplaw Enters.*,
448 F.3d 518 (2d Cir. 2006) ....................26

*Durham Indus., Inc. v. Tomy Corp.*,
630 F.2d 905 (2d Cir. 1980) ....................................................................7

*Eastman Kodak Co. v. STWB, Inc.*,
452 F.3d 215 (2d Cir. 2006) ....................................................................20

*Eden Toys, Inc. v. Florelee Undergarment Co.*,
697 F.2d 27 (2d Cir. 1982) ....................................................................7, 9, 17

*Effects Assocs., Inc. v. Cohen*,
908 F.2d 555 (9th Cir. 1990) ....................................................................25

*Foman v. Davis*,
371 U.S. 178 (1962)....................................................................28

*Garcia v. Google, Inc.*,
786 F.3d 733 (9th Cir. 2015) (en banc) ....................................................................23

*Gracen v. Bradford Exch.*,
698 F.2d 300 (7th Cir. 1983) ....................................................................14

*Hampton v. Paramount Pictures Corp.*,
279 F.2d 100 (9th Cir. 1960) ....................................................................23

*Hiller, LLC v. Success Grp. Int'l Learning All., LLC*,
976 F.3d 620 (6th Cir. 2020) ....................................................................8, 9

*Horoshko v. Citibank, N.A.*,
373 F.3d 248 (2d Cir. 2004) ....................................................................30

*JBJ Fabrics, Inc. v. Brylane, Inc.*,
714 F. Supp. 107 (S.D.N.Y. 1989) ....................................................................10

*Keeling v. Hars*,
809 F.3d 43 (2d Cir. 2015) ....................................................................7, 9

*Keeling v. New Rock Theater Prods., LLC*,
No. 10-CV-9345, 2011 WL 1899762 (S.D.N.Y. May 17, 2011).......................13

*Kirschner v. KPMG LLP*,
15 N.Y.3d 446 (2010)....................................................................18, 21

*Kosakow v. New Rochelle Radiology Assocs., P.C.*,
274 F.3d 706 (2d Cir. 2001) ....................21, 22

*Latimer v. Roaring Toyz, Inc.*,
601 F.3d 1224 (11th Cir. 2010) ....................14

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
797 F.3d 160 (2d Cir. 2015) ....................28

*Medforms, Inc. v. Healthcare Mgmt. Sols., Inc.*,
290 F.3d 98 (2d Cir. 2002) ....................27

*Meyer v. Seidel*,
89 F.4th 117 (2d Cir. 2023) ....................27, 28

*Minskoff v. Am. Express Travel Related Servs. Co.*,
98 F.3d 703 (2d Cir. 1996) ....................19

*Mulcahy v. Cheetah Learning LLC*,
386 F.3d 849 (8th Cir. 2004) ....................14, 15

*Oliver Schs., Inc. v. Foley*,
930 F.2d 248 (2d Cir. 1991) ....................27

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.*,
681 F.3d 114 (2d Cir. 2012) ....................28

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
572 U.S. 663 (2014)....................21, 23

*Pickett v. Prince*,
207 F.3d 402 (7th Cir. 2000) ....................8

*Poppington, LLC v. Brooks*,
No. 20-CV-8616, 2021 WL 3193023 (S.D.N.Y. July 27, 2021)....................13

*Schrock v. Learning Curve Int'l, Inc.*,
586 F.3d 513 (7th Cir. 2009) ....................13

*Silverman v. CBS Inc.*,
870 F.2d 40 (2d Cir. 1989) ....................7

*Stewart v. Abend*,
495 U.S. 207 (1990) .......... 4

*Thomson v. Larson*,
147 F.3d 195 (2d Cir. 1998) .......... 27, 29

*U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*,
692 F.3d 1009 (9th Cir. 2012) .......... 8, 14

*Wilson v. Merrill Lynch & Co.*,
671 F.3d 120 (2d Cir. 2011) .......... 30

*Wolf v. Travolta*,
167 F. Supp. 3d 1077 (C.D. Cal. 2016) .......... 10

*Wozniak v. Warner Bros. Ent. Inc.*,
726 F. Supp. 3d 213 (S.D.N.Y. 2024) .......... 9

*Yee v. City of Escondido*,
503 U.S. 519 (1992) .......... 20

*Yonay v. Paramount Pictures Corp.*,
163 F.4th 685 (9th Cir. 2026), *petition for cert. filed*, No. 26-61 (U.S. July 14, 2026) .......... 12

***Statutes***

17 U.S.C. § 101 .......... 25

17 U.S.C. § 103 .......... *passim*

17 U.S.C. § 106(2) .......... 6

17 U.S.C. § 201 .......... 1, 24, 25

17 U.S.C. § 204(a) .......... 1, 24, 25

17 U.S.C. § 410 .......... 10, 24

***Rules***

Fed. R. App. P. 32 .......... 31

2d Cir. Local Rule 32.1 .......... 31

***Other Authorities***

H.R. Rep. No. 94-1476 (1976)....................................................................2, 4, 6

1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 3.06 (2026) ..5, 6

2 William F. Patry, Patry on Copyright § 3:59 (Mar. 2023 update)..........................5

Paul Goldstein, Goldstein on Copyright § 2.16 (3d ed. Supp. 2023-2)................5, 6

U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 313.6(B) (3d ed. 2021)..........................................................................5

# INTRODUCTION

Paramount used what Shaun Gray wrote and now says he owns none of it. In 2017 Gray wrote fifteen scenes for *Top Gun: Maverick* (the "Gray Scenes"). They include the film's signature sequences: the Mach 10 test flight, the canyon strike on a uranium facility, the shoot-down and rescue behind enemy lines, and the escape in a stolen F-14. AOB 33-35. Gray wrote the scenes at the invitation of the film's screenwriter and the director Paramount hired to develop the sequel, working from the *Top Gun* materials they gave him. He fixed each original scene in a dated file and registered the copyrights. Paramount never hired him and never obtained a signed writing from him. 17 U.S.C. §§ 201(a), 204(a). Yet Paramount acknowledges that it used the screenplay draft containing those scenes in creating the film. Resp. Br. 13. That film became "one of the highest-grossing movies of all time." A-23.

Gray's only entrée into the insular film business was his cousin Eric Singer, the film's screenwriter. A-726. Gray wrote on Singer's promise of credit and *repeatedly* asked Singer to tell Paramount what he had written. A-727–728. In January 2023 Gray wrote to Paramount himself, explained everything he had written, and asked for some credit. A-729. Paramount rebuffed him, refusing even to engage. A-729.

Paramount says that because the Gray Scenes feature Maverick, § 103(a) of the Copyright Act strips everything Gray wrote of protection and leaves Paramount free to use his original contributions in perpetuity without payment or credit. The district court agreed and granted summary judgment, resolving the record against the non-movant. SPA-31, 34. That ruling rests on two errors. Either requires reversal.

First, the ruling misreads the statute. Section 103(a) withholds protection from "any part of the work in which [preexisting] material has been used unlawfully." It reaches that part and nothing more. The House Report confirms that the provision "preserves protection for those parts of the work that do not employ the preexisting work." H.R. Rep. No. 94-1476, at 57 (1976). Gray does not claim Maverick. He claims what he added: new action, new dialogue, a new story. Section 103(b), the Copyright Office, and even the treatises Paramount cites draw the same line. Paramount erases it. On its reading, a studio may take a writer's original scenes, film them, and owe him nothing, so long as its own character appears in them.

Second, the ruling decides a question that belongs to the jury. Section 103(a) applies only if Gray used *Top Gun* material "unlawfully." He used it because Paramount's screenwriter and director gave it to him to work from. Singer himself testified that it "doesn't make sense" to say Gray could not use Paramount's assigned *Top Gun* materials. A jury could find that use authorized under any of three paths:

actual authority, apparent authority, or implied license. The district court took the question from the jury by asking a different one: whether anyone gave Gray permission to own what he wrote. Section 103(a) turns on lawful use. It says nothing about permission to own.

Paramount's brief repairs neither error. It answers claims Gray never made, attacks his character, and reads the summary-judgment record in favor of the moving party. Its position comes to this: a studio may invite a writer's work through its own screenwriter and director, use that work, and keep every word of it because its character appears in the scenes. Section 103(a) says no such thing. It protects what Gray added, and whether his use of *Top Gun* was authorized is for a jury. The judgment should be reversed.

## ARGUMENT

### I. SECTION 103(a) PROTECTS GRAY'S ORIGINAL EXPRESSION EVEN IF HIS USE WERE UNAUTHORIZED.

#### A. "Any Part Of" Means What It Says.

Section 103(a) provides: "The subject matter of copyright as specified by section 102 includes compilations and derivative works, but protection for a work employing preexisting material in which copyright subsists does not extend to any part of the work in which such material has been used unlawfully." The sentence does two things. It withholds protection from a "part," and by the same words it leaves protection in place for every other part. A statute meant to forfeit the whole

work would say that protection "does not extend to the work." Congress wrote "any part of" instead.

Congress explained the choice. The provision "prevents an infringer from benefiting, through copyright protection, from committing an unlawful act, but preserves protection for those parts of the work that do not employ the preexisting work." H.R. Rep. No. 94-1476, at 57. Section 103(b) draws the same line from the other side. The derivative copyright covers "the material contributed by the author … as distinguished from the preexisting material employed in the work," and it "does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material." Each author owns what he added. "The aspects of a derivative work added by the derivative author are that author's property." *Stewart v. Abend*, 495 U.S. 207, 223 (1990).

Paramount's textual answer is that the statute says any part "in which" preexisting material is used, and so reaches every part of every scene in which Maverick appears. Resp. Br. 24-25. But the statute asks in which part "such [preexisting] material" "has been used." The dialogue Gray wrote for Maverick in 2017 is not preexisting material. Nor are the thrilling action sequences Gray invented. Both are readily distinguished from Paramount's protected material. Paramount's reading treats a character's presence in a scene as transferring ownership of everything around him. Section 103(b) forecloses that. Read together,

the two subsections give each his own: Paramount keeps Maverick, and Gray keeps the new material he wrote.

The Copyright Office reads the statute the same way. Section 103(a) "allows the author of a derivative work … to claim copyright in 'those parts of the work that do not [unlawfully] employ the preexisting work,'" and the Office may register such a work "provided that the author's contribution to that work can be separated from the preexisting material." U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 313.6(B) (3d ed. 2021). Gray's applications identified *Top Gun* and excluded it from his claim, and the Office registered what he added. A-772.

Paramount's treatises do not say otherwise. Paramount quotes Patry selectively. Resp. Br. 25. The same section explains that where "the new derivative material is separate," its author may sue for its infringement, and that infringing the derivative right and owning a copyright in one's additions "are not mutually exclusive." 2 William F. Patry, Patry on Copyright § 3:59 (Mar. 2023 update). Paramount cites Nimmer as "similar." Resp. Br. 25. But Nimmer states the rule as Gray does: "only the portion of a derivative or collective work that employs the pre-existing work would be denied copyright." 1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 3.06 (2026). And Goldstein states, after what Paramount quotes, that "[e]ven derivative works … will not always be pervaded by the

underlying work from which they derive." Paul Goldstein, Goldstein on Copyright § 2.16 (3d ed. Supp. 2023-2).

Paramount would confine a part-by-part inquiry to compilations only. Resp. Br. 27. But § 103(a) applies in terms to "compilations and derivative works." The House Report's example of a derivative work that "could not be copyrighted at all" is "an unauthorized translation of a novel," where the underlying text is present in every line. H.R. Rep. No. 94-1476, at 57-58. A sequel is not a translation. It is a new story. Even *Anderson*, on which the district court relied, acknowledged that the House Report and Nimmer both "start with a general proposition that only the portion of a work which unlawfully employs the prior work should be denied copyright protection." *Anderson v. Stallone*, 1989 WL 206431, at *9-10 (C.D. Cal. Apr. 25, 1989).

Nor does this reading impair § 106(2). Resp. Br. 24. Paramount's exclusive right to prepare derivative works stays intact. An unauthorized derivative author cannot exploit his work without the owner's consent. But that does not mean his original material is free for the taking. What he keeps is the copyright in what he added, which leaves the owner's copyright untouched. 17 U.S.C. § 103(b). Neither may use the other's expression without consent. Section 103(a) was written to keep infringers from profiting, not to let the underlying owner profit from another author's work for free.

### B. This Court's Cases Protect a Derivative Author's Original Contributions.

A derivative work "is entitled to registration as a copyrighted work even though it would infringe the original copyrighted work if it were created without the permission of the owner of copyright in the underlying work." *Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27, 34 (2d Cir. 1982), superseded on other grounds. The "mere fact that a litigant's unauthorized 'creations are derivative works is in itself, of course, no bar to copyrightability.'" *Keeling v. Hars*, 809 F.3d 43, 50 (2d Cir. 2015) (quoting *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 909 (2d Cir. 1980)). What the derivative author owns is "the incremental additions of originality contributed by the authors of the derivative works." *Silverman v. CBS Inc.*, 870 F.2d 40, 49 (2d Cir. 1989). That principle is "fully applicable to works that provide further delineation of characters already sufficiently delineated to warrant copyright protection." *Id.* at 50. New scenes, new plot, and new dialogue for an existing character are the increment. The use of a protected character does not make every word he speaks, and every event around him, the property of the character's owner.

Paramount relies on a passing observation in *Keeling*, a fair-use case. Resp. Br. 16, 18. But *Keeling* protected the original contributions of a parody that reused a film's characters, plot, and dialogue without permission. 809 F.3d at 49-51. And when the defendant there argued, as Paramount does here, that the film's material

"pervade[s]" the script and so defeats its copyright, this Court rejected the argument. *Id.* at 51 n.8. The script's "use of a substantial portion of the underlying work," the Court explained, "presents no hindrance to findings of either fair use or originality." *Id.* All that was required was "some substantial, not merely trivial, originality." *Id.*

The Sixth Circuit has rejected Paramount's rule in terms. It refused to hold "that the author of an unauthorized derivative work forfeits all copyright protection in the work, regardless of whether preexisting material 'pervades' it." *Hiller, LLC v. Success Grp. Int'l Learning All., LLC*, 976 F.3d 620, 629 (6th Cir. 2020). Paramount cites an aside in *Hiller*, Resp. Br. 27-28, but *Hiller* held that because the work before it "contain[ed] discrete parts," its author kept the copyright in them. *Id.* at 628, 630. The Ninth Circuit reads § 103 the same way: "a derivative author may own the copyright in material the author contributed to a preexisting work, but not in infringing material or material the author did not create." *U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, 692 F.3d 1009, 1016 (9th Cir. 2012).

Paramount's remaining cases involved works with nothing separable to protect. In each, the claimed "original contribution" was the appropriation itself: a guitar in the shape of Prince's symbol, *Pickett v. Prince*, 207 F.3d 402, 406-07 (7th Cir. 2000) (plaintiff "acknowledge[d] that he is an infringer"); an unsolicited treatment for a fourth *Rocky* film, *Anderson*, 1989 WL 206431, at *1; and an unsolicited Batman story whose "entire premise and plot" centered on prior Batman

elements, *Wozniak v. Warner Bros. Ent. Inc.*, 726 F. Supp. 3d 213, 238 (S.D.N.Y. 2024). None involved fifteen scenes of new action, plot, and dialogue written for the owner's own film at the invitation of its screenwriter and director. Paramount's string cite adds karaoke recordings of unlicensed songs and troll dolls. Resp. Br. 18-19. Neither decision considered whether an author's separable original expression is protected under § 103(a).

### C. Whether *Top Gun* "Pervades" the Gray Scenes Is a Question of Fact for the Jury.

"Pervade" is not in the statute. Section 103(a) withholds protection from a "part" of the work, and § 103(b) protects the author's contribution "as distinguished from the preexisting material employed in the work." A work is "pervaded," in the only sense the statute permits, when the borrowed material runs through every part of it, so that nothing the author added can possibly be distinguished and protected on its own. All protection is lost "only if" preexisting content "ran throughout every 'part'" of the work. *Hiller*, 976 F.3d at 629; *see Eden Toys*, 697 F.2d at 34 n.6 (material that would "pervade the entire derivative work"). This Court rejected a pervasion argument where the work had substantial originality of its own. *Keeling*, 809 F.3d at 51 n.8. Paramount admits that limit. Resp. Br. 19, 25. The question is therefore not whether Maverick is in nearly every scene. It is whether what Gray wrote can be distinguished and protected under § 103(b). It can, many times over.

The burden of showing pervasion is on the party invoking it. "[E]ven if plaintiff's use of the underlying design were unlawful, it would be entitled to protection for its original contributions absent some showing by defendant that the unlawful use pervaded the entire work." *JBJ Fabrics, Inc. v. Brylane, Inc.*, 714 F. Supp. 107, 110 (S.D.N.Y. 1989). Where portions are "not traceable to" the underlying source, a jury could find that the derivative portions "do not pervade the entire works." *Wolf v. Travolta*, 167 F. Supp. 3d 1077, 1091 (C.D. Cal. 2016). Paramount has lost this argument before. When it argued that a picture of the Iron Man character was an unprotectable derivative work, the court held that whether the artist "would still be entitled to a copyright in any new elements" of his work "involves factual determinations." *Adams v. Paramount Pictures Corp.*, 2009 WL 10671572, at *3 (C.D. Cal. Jan. 6, 2009).

Pervasion is a question of fact because answering it requires what juries do in every copyright case: compare the works, filter out unprotectable elements, and trace each portion to its source. Preexisting material is "used unlawfully" only where protected expression has been taken, and that requires a substantial-similarity analysis. The district court conducted none. It just called the conclusion "self-evident," SPA-32, resolving against the non-movant an inference that had to be drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Paramount, which bore the burden of rebutting the presumption of validity under § 410(c),

offered none either. It accepts for purposes of its motion that Gray wrote his fifteen scenes. A-763–767. On summary judgment a "pervasion" label cannot replace the comparison the statute requires.

That comparison shows just how much is Gray's alone: expression that is protectable independent of Maverick's presence in a scene.

First, the action. Gray originated the film's signature set pieces: a hypersonic test flight pushing past Mach 10; a low-level strike on a uranium facility through a narrow canyon; a shoot-down, ejection, and rescue behind enemy lines; and the theft of an enemy F-14 for the escape. AOB 33-35. None appears in *Top Gun*. Each reflects Gray's own selection, arrangement, and choreography of events, the core of authorial originality.

Second, the words. Every line of dialogue Gray wrote for Maverick in 2017 is new. None appears in *Top Gun*. Paramount says Gray's briefing scene, for instance, cannot stand without Maverick's lines. Resp. Br. 28. But Gray wrote Maverick's lines too. Removing Maverick's lines shows only that the scene is Gray's, not *Top Gun*'s. Paramount adds that little of Gray's dialogue reached the film. Resp. Br. 23. That goes to whether Paramount's film copied Gray, which the district court did not reach, and it is at odds with the court's own earlier review of the works, which identified "approximately ninety examples of significant overlap." SPA-19.

Against Gray's fifteen original, time-stamped scenes, Paramount counts how often the name "Maverick" appears. Resp. Br. 20. Counting a name does not show that protected expression from *Top Gun* so fills the scenes that Gray's own material cannot be distinguished from it. Paramount concedes that the Navy school, the aircraft, and the training regimen are unprotected facts. Resp. Br. 22 & n.5. In fact, it persuaded the Ninth Circuit that much of the *Top Gun* "universe" on which the district court relied, SPA-32, is *unprotectable*. *Yonay v. Paramount Pictures Corp.*, 163 F.4th 685, 693-96 (9th Cir. 2026), *petition for cert. filed*, No. 26-61 (U.S. July 14, 2026). It also concedes that one Gray Scene does not feature Maverick at all, and calls that scene pervaded anyway because it features Goose's son, who appears in *Top Gun* only for seconds, as a small child with no lines. Resp. Br. 20 n.4; A-746–747 n.7. What remains is one character, a second glimpsed as a child in the original, and callbacks to Goose. Whether that "pervades" Gray's fifteen scenes of new action, plot, and dialogue, so that nothing he wrote can be distinguished for protection under § 103(a), is for a jury.

## II. INDEPENDENTLY, A JURY COULD FIND THAT GRAY'S USE OF *TOP GUN* WAS AUTHORIZED.

Section 103(a) applies only where preexisting material "has been used unlawfully." If Gray's use of *Top Gun* was authorized, the statute has no "part" to withhold, and the judgment fails without regard to Part I. The record would let a jury find authorization on three grounds.

### A. The Question Is Permission to Use *Top Gun* Material, Not Permission for Gray to Own What He Wrote.

The district court asked the wrong question. Section 103(a) asks whether Gray's use of *Top Gun* material was "unlawful," and an authorized use is not. The court asked instead whether anyone had conveyed to Gray "a right to independently copyright his derivative work." SPA-34. Paramount repeats the error. Resp. Br. 31. The Seventh Circuit reversed an identical ruling in *Schrock*, where the district court had held that a photographer "had permission to make but not permission to copyright" his photographs. *Schrock v. Learning Curve Int'l, Inc.*, 586 F.3d 513, 515 (7th Cir. 2009). The district judge here has himself rejected, as a "contention [with] no basis in law," the notion that "a derivative work[] cannot be protected by copyright without the permission of the original copyright owner." *Poppington, LLC v. Brooks*, 2021 WL 3193023, at *5 (S.D.N.Y. July 27, 2021) (Rakoff, J.) (quoting *Keeling v. New Rock Theater Prods., LLC*, 2011 WL 1899762, at *1 (S.D.N.Y. May 17, 2011)).

"[T]here is nothing in the Copyright Act requiring the author of a derivative work to obtain permission to copyright his work from the owner of the copyright in the underlying work." *Schrock*, 586 F.3d at 523. Where the author was "authorized to make" the work, copyright in it "arises by operation of law," and he owns it "to the extent of [its] incremental original expression." *Id.* at 515. His copyright does "not require authority to copyright from the owner or licensee of the copyright in the

underlying works—whether actual or apparent." *Id.* at 524 n.8. The Ninth Circuit agrees. *ABS Ent., Inc. v. CBS Corp.*, 908 F.3d 405, 425 (9th Cir. 2018) ("We agree with that holding."). The only permission at issue is permission to use *Top Gun*.

Whether a use was authorized, and therefore not "unlawful," is a question of fact when the author was invited to use the material by someone the owner placed in a position to extend the invitation. In *Gracen*, the owner's licensee invited an artist to paint a character from *The Wizard of Oz*. The Seventh Circuit reasoned that "obviously she had some authority, having been invited" by the licensee. *Gracen v. Bradford Exch.*, 698 F.2d 300, 303 (7th Cir. 1983). Although the licensee's own license "may not have authorized" what it told her, it "may have had apparent authority to do so and that is all that would be necessary" to protect an artist "who presumably knew nothing of the terms of the license." *Id.* Summary judgment for the owner on its counterclaim was therefore "erroneous." *Id.*

In *Latimer*, the owner's licensee asked a photographer to shoot motorcycles bearing the owner's artwork and gave him access to them. His photographs were "not infringing works and qualif[ied] for copyright protection." *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1236 (11th Cir. 2010). In *U.S. Auto Parts*, the Ninth Circuit reversed summary judgment because "a genuine issue of material fact exist[ed] as to whether [the owner's] conduct created an implied license" to prepare derivative works. 692 F.3d at 1020. And in *Mulcahy*, which Paramount cites, the

Eighth Circuit reversed summary judgment, noting that whether the owner authorized the use was "a disputed issue of fact." *Mulcahy v. Cheetah Learning LLC*, 386 F.3d 849, 850-51 (8th Cir. 2004); Resp. Br. 19.

**B. Actual Authority.**

Paramount assumes that Singer and Kosinski were its agents, "hired to help develop Maverick." Resp. Br. 31. The district court found that Paramount authorized them "to use Paramount's preexisting *Top Gun: Maverick*-related materials, including the original *Top Gun* film, to develop the screenplay." SPA-26. The question is whether that authority reached a collaborator they brought to the task and supplied with Paramount's materials. A jury could find that it did, for four reasons.

First, the contracts say so. Each defines the new "Material" to be developed as including work created "either alone or in collaboration with others." A-180; A-582. Kosinski's required him to render "all services customarily rendered during development by directors in the motion picture industry." A-174. Paramount answers that "others" means only its "other work-made-for-hire" contributors. Resp. Br. 33. The contracts do not say that. Paramount's reading is an inference from surrounding terms, supported by declarations from its own

witnesses. A-754–757. At a minimum, choosing between two readings of an ambiguous term is a jury function. AOB 44.

Second, Paramount's own account of the development process shows that Gray's use of Paramount's material was permitted. Paramount does not dispute that Gray attended story meetings with Singer, Kosinski, and Paramount's Navy consultants. A-761–762, 768–771. Singer emailed Gray Paramount's prior sequel script with the instruction: "FOR YOUR EYES ONLY … THIS IS WHAT WE HAVE TO WORK FROM." A-628. That script was one of two that, with *Top Gun* itself, Paramount defined as the "Assigned Material" in Singer's contract. A-550–555, 558–559. Kosinski furnished the other. A-608–609. Singer swore that "Gray also had access to the source material that Paramount provided me." A-144. Asked whether he ever told Gray that "any use by Gray of these assigned materials or any other Top Gun materials" was unauthorized, Singer answered: "[W]hy would I tell him … he's my writer's assistant but he can't break down the assigned materials or do anything with it? That doesn't make sense." Asked, "So that's a no, right?" he confirmed: "Yeah, that's a no." A-741–742. Kosinski never told Gray his use was

unauthorized either. A-741. Paramount's brief does not mention this testimony.

That testimony forecloses summary judgment. On Paramount's own account, Gray was in the room at its agents' invitation, in possession of materials they gave him, doing work they assigned. A use of *Top Gun* material cannot be authorized when the user is called an assistant and infringing when his work turns out to be authorship. Section 103(a) looks to the lawfulness of the use, not to the convenient title Singer gave the user.

Third, Singer and Kosinski gave Gray Paramount's materials for the very purpose of co-writing the sequel. In *Eden Toys*, this Court called a finding of unauthorized use "mistaken" on the plaintiff's showing that the owner had "supplied the [underlying] sketches … for the very purpose of allowing [the plaintiff] to prepare derivative works based on those sketches." 697 F.2d at 34 n.6. Gray made the same showing. Paramount's writer and director gave him the assigned sequel materials, and Singer told him: "THIS IS WHAT WE HAVE TO WORK FROM." A-628.

Fourth, Singer's "solely written" warranty does not make Gray's use unauthorized. Resp. Br. 32. That is a promise by Singer to Paramount. If Singer broke it, Paramount's claim is against Singer. A principal does not escape its agent's acts by showing that the agent was unfaithful to it. That defense "is at odds with the

established rule that a principal is liable to third parties for the acts of an agent operating within the scope of his real or apparent authority." *Citibank, N.A. v. Nyland (CF8) Ltd.*, 878 F.2d 620, 623-24 (2d Cir. 1989). A corporation "must, therefore, be responsible for the acts of its authorized agents even if particular acts were unauthorized." *Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 465 (2010).

### C. Apparent Authority.

Paramount asks whether a screenwriter and a director customarily hold a studio's power to license its intellectual property. Resp. Br. 34-35. That is the wrong question. Gray does not claim that Singer or Kosinski licensed him to exploit *Top Gun*. He claims they were authorized, or reasonably appeared to be authorized, to have him help write the sequel they were hired to develop. The record supports that.

Paramount concedes that "appointment of a person to a position with generally recognized duties may create apparent authority." Resp. Br. 34. Kosinski testified that, as director, he was "the man in charge" and closely involved in developing the screenplay. A-623–624. The district court recognized that Kosinski "exerted significant control over the film's creative direction and screenplay in ways approved by Paramount producers." SPA-37. A jury could find that choosing who sits at the writing table falls within the generally recognized duties of the director a studio puts in charge of developing its sequel.

Paramount answers that Gray must have known Singer lacked authority, because he was waiting for Singer to tell Paramount about his role. Resp. Br. 35-36. But what Gray understood was that Singer "was supposed to put our names on the script when it went into the studio," A-525, and that Paramount "would then have to add [him] to a contract." Resp. Br. 35. That is an understanding about credit and a contract. It is not an admission that writing the script was forbidden. The district court recounted that Gray "urged Singer to disclose his participation to Paramount." SPA-27.

Paramount's argument also does not reach Kosinski. Gray's evidence is that Kosinski asked for his involvement, worked with him in dozens of story meetings, and knew Gray was writing the third act. A-724–726. Paramount disputes those facts with Kosinski's declaration. A-758–760, 763–767. That is a credibility contest. And the "existence of apparent authority is normally a question of fact, and therefore inappropriate for resolution on a motion for summary judgment." *Minskoff v. Am. Express Travel Related Servs. Co.*, 98 F.3d 703, 708 (2d Cir. 1996).

**D. Implied License.**

Paramount says Gray waived this theory. Resp. Br. 37. He did not. Gray argued below that he "wrote his scenes at the express invitation of Paramount's director and key screenwriter, with the obvious understanding that Maverick was to

be [a] sequel to Top Gun, inherently encompassing its permitted use." A-747. Implied license is another legal label for the same contention on the same facts. "[A]ppeals courts may entertain additional support that a party provides for a proposition presented below." *Eastman Kodak Co. v. STWB, Inc.*, 452 F.3d 215, 221 (2d Cir. 2006); *see Yee v. City of Escondido*, 503 U.S. 519, 534 (1992).

Paramount's own summary-judgment papers make the point. Seeking a license for itself, it told the district court that Gray wrote "at Singer's request—and Singer, in turn, was preparing the Singer Draft at Paramount's request," and that "[a] request that goes through an intermediary is no less of a request." A-118 n.4. Paramount cannot treat "Singer's request" as its own when it wants Gray's scenes and as a stranger's when Gray claims them. If Gray wrote at Paramount's request via Singer, he needed no further authorization or license to do what was asked.

## III. PARAMOUNT'S ALTERNATIVE GROUNDS DO NOT SUPPORT AFFIRMANCE.

Paramount offers two alternative grounds for affirmance. Neither can sustain the judgment, and this Court should reject both. The first, equitable estoppel, is an affirmative defense on which Paramount bears the burden, and on this record it fails. The second, its *Casa Duse* argument, is one the district court twice rejected, correctly.

### A. Equitable Estoppel Cannot Be Resolved Against Gray on Summary Judgment.

Equitable estoppel is an affirmative defense that Paramount must prove. *ABKCO Music, Inc. v. Sagan*, 50 F.4th 309, 321 (2d Cir. 2022). "Whether equitable estoppel applies in a given case is ultimately a question of fact." *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 725 (2d Cir. 2001). The defense requires "intentionally misleading representations" and detrimental reliance on them. *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 684 (2014). Delay "is not an element." *Id.* at 685. Each element is disputed here.

*Ignorance of the true facts.* Paramount's director and its screenwriter knew what Gray was doing. An agent's knowledge acquired within the scope of the agency is "presumptively imputed" to the principal. *Kirschner*, 15 N.Y.3d at 465. The district court recognized that Gray "presented evidence that both Singer and Kosinski knew about Gray's participation" from 2017, and it declined to resolve their agency as a matter of law. SPA-36–37. Paramount invokes the adverse-interest exception. Resp. Br. 42-43. That is the "most narrow of exceptions." *Kirschner*, 15 N.Y.3d at 466. It applies only where the agent has "totally abandoned his principal's interests." *Id.* Singer and Kosinski were doing what Paramount hired them to do: develop the sequel. Paramount identifies no adverse interest on Kosinski's part at all.

*Misleading conduct.* Paramount's theory is silence. Silence can amount to a misrepresentation "where a party has a legal duty to speak." *Kosakow*, 274 F.3d at 725. The district court held that whether Gray owed Paramount any duty to disclose is "at least a jury question." SPA-39–40. Gray's evidence is that he repeatedly pressed Singer to tell Paramount and was assured it would be done. SPA-27; A-727–728. That is the account of a writer who depended on his cousin to keep a promise about credit. It is not the account of a schemer. A jury could find that Gray intended disclosure, not concealment. Paramount's cases involved plaintiffs who dealt directly with the defendant and encouraged its use of their works. Resp. Br. 43. None involved a writer working inside the owner's own development process at the invitation of the owner's agents.

*Detrimental reliance.* Paramount says that had it known, it would have removed Gray's scenes or obtained his signature. Resp. Br. 44. The district court treated that same assertion as a jury question on Paramount's fraud counterclaim. SPA-40. Gray's evidence is that when he gave notice in January 2023, Paramount refused to engage. A-729. A jury could find that Paramount's course would have been the same had notice come sooner, or that Paramount could readily have resolved the matter in January 2023 in any event. Further, by Paramount's own account, what it relied on was Singer's warranty that he wrote his draft alone. SPA-40; Resp. Br. 44. Estoppel requires that Paramount have relied on deception by

Gray himself. *Petrella*, 572 U.S. at 684. It does not protect "reliance on the assertion of a third party." *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104-05 (9th Cir. 1960). On Paramount's own account of its reliance, the defense fails as a matter of law. At a minimum, it cannot be decided against Gray without a trial.

### B. *Casa Duse* Does Not Reach Written Scenes Fixed and Registered by Their Author.

Paramount argues that the Gray Scenes are not works of authorship under *Casa Duse*. Resp. Br. 45-47. The district court twice rejected that argument. SPA-20–21; SPA-30–31. It was right. *Casa Duse* answered a narrow question "on the facts of the present case": whether a director's contributions that are "inseparable from, and integrated into," a film are themselves a work of authorship. *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 254, 256 (2d Cir. 2015). Those contributions existed only in the film footage. The Court contrasted them with "freestanding works that are incorporated into a film," whose authors "may copyright these 'separate and independent work[s].'" *Id.* at 259. It treated the screenplay in that case as such a work, separately owned and licensed by its writer to the producer. *Id.* at 251, 261. Written scenes, fixed by their author before any film existed, fall on the protected side of that line.

*Garcia*, which Paramount invokes through *Casa Duse*, draws the same line. Resp. Br. 47. The actress there lost because "she played no role in fixation." *Garcia v. Google, Inc.*, 786 F.3d 733, 744 (9th Cir. 2015) (en banc). The court's concern

was "splintering a movie into many different 'works,' even in the absence of an independent fixation." *Id.* at 742. It "in no way foreclose[d] copyright protection" for "standalone works that are separately fixed and incorporated into a film." *Id.* at 744 n.13. Paramount's own joint-authorship case says the same of a writer's pages: scenes and dialogue written for a film "would have been independently copyrightable." *Aalmuhammed v. Lee*, 202 F.3d 1227, 1231 (9th Cir. 2000); Resp. Br. 51, 54.

The Gray Scenes are literary works. Gray fixed each of them in a dated, time-stamped text file before the Singer Draft existed. A-731–734; A-725. They are works of authorship that Gray himself "create[d] and fix[ed]." *Casa Duse*, 791 F.3d at 258. The Register of Copyrights examined them, determined that they constitute "copyrightable subject matter," and registered them. 17 U.S.C. § 410(a); A-508. That Gray wrote them for a screenplay does not change what they are.

Paramount's position also proves too much. If Gray is not a joint author, and his scenes are not his own work, then a writer's independently copyrightable contribution has no author and passes to the studio without a writing. The Copyright Act forecloses that result. 17 U.S.C. §§ 201(a), 204(a). "[W]here a non-employee contributes to a book or movie, … the exclusive rights of copyright ownership vest in the creator of the contribution, unless there is a written agreement to the contrary."

*Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 557 (9th Cir. 1990). Section 204 "makes no special allowances for the movie industry." *Id.* at 558.

# IV. THE JOINT-AUTHORSHIP CLAIM SHOULD NOT HAVE BEEN DISMISSED ON THE PLEADINGS WITH PREJUDICE.

## A. Paramount's Defense of the Dismissal Assumes Away the Complaint's Agency Allegations.

Paramount's central point is that it could not have intended Gray to be a joint author because it did not know of him. Resp. Br. 3. But a corporation intends only through people. Paramount is "considered the author" of Singer's contribution only because Singer wrote it for hire. 17 U.S.C. § 201(b). A joint work is one "prepared by two or more authors with the intention that their contributions be merged." 17 U.S.C. § 101. The intent with which contributions were prepared and merged is the intent of the people who prepared and merged them.

The Complaint alleged what the district court said was missing. It alleged that Singer and Kosinski acted "as PPC's employees and/or agents acting within the scope of such employment and/or agency." A-28. It alleged that "[b]oth Singer and Kosinski represented themselves to Gray as having the authority and the approval of PPC and/or had the apparent authority of PPC to involve Gray in the project." A-27–28. It alleged that Gray and Paramount manifested their intent "in story meetings, writing sessions, and other communications between Gray and PPC's employees, agents, and/or representatives, including Singer and … Kosinski."

A-27–28, 31. Those allegations had to be accepted as true. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). The court nonetheless faulted Gray for not "adequately" alleging that "Singer or Kosinski bound PPC … via actual or apparent authority." SPA-15. That demanded proof at the pleading stage. Whether an agent's intent and knowledge are attributable to his principal is a "highly-factual and often nuanced" question, and "[s]lavish deference to contractual language is inappropriate" in resolving it. *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 523 (2d Cir. 2006). Where plaintiffs "have pled facts that could reasonably support a finding of control," it is "error to dismiss the complaint at the pleadings stage for failure to allege agency." *Id.*

Paramount's factor-by-factor analysis repeats the district court's error of weighing indicia against the pleader. Resp. Br. 50-54. The Complaint alleges that Gray "exercised decision-making and editorial authority over revisions to other scenes" and "creative control over separate and indispensable elements of the Screenplay." A-30. Paramount answers that Gray lacked control over the rest. Resp. Br. 51. But the concern with co-authorship intent "requires less exacting consideration in the context of traditional forms of collaboration." *Childress v. Taylor*, 945 F.2d 500, 508 (2d Cir. 1991). Two writers drafting one screenplay is a traditional form of collaboration. On a motion to dismiss, the question

is not who controlled more. It is whether the pleaded facts permit the inference of shared intent. They do.

Paramount's work-for-hire agreements with other writers do not change the analysis. Resp. Br. 53-54. They show that Paramount wanted to own everything. They do not show what Singer and Gray intended when they wrote together. A studio's general preference does not defeat the statutory consequence of its agent's decision to co-write with someone who signed nothing with the studio. Paramount's authorities were decided on developed records. *Thomson* followed a bench trial. *Thomson v. Larson*, 147 F.3d 195, 199 (2d Cir. 1998). *Childress* was decided on summary judgment. 945 F.2d at 502. None supports resolving mutual intent on the pleadings. Authorship disputes of this kind are "generally a question of fact for the jury." *Medforms, Inc. v. Healthcare Mgmt. Sols., Inc.*, 290 F.3d 98, 110 (2d Cir. 2002).

**B. The Denial of Leave to Amend Rested on Legal Error.**

The district court dismissed the joint-authorship and accounting claims with prejudice, and without leave to amend, in its first ruling on the first complaint. That is rarely proper. "Where the possibility exists that the defect can be cured and there is no prejudice to the defendant, leave to amend at least once should normally be granted as a matter of course." *Meyer v. Seidel*, 89 F.4th 117, 140 (2d Cir. 2023) (quoting *Oliver Schs., Inc. v. Foley*, 930 F.2d 248, 253 (2d Cir. 1991)). "If the

underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Paramount argues that Gray never requested leave to amend. Resp. Br. 57. The district court did not rest on that, and a plaintiff is not required to seek leave before he has "the benefit of a ruling" identifying the defect. *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015). The court denied leave in a footnote, saying that counsel had proffered no further facts at oral argument and that amendment would be futile. SPA-15 n.6. A futility ruling is a legal conclusion reviewed de novo. *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012). When it rests on a mistaken premise, the denial is "as a matter of law erroneous." *Meyer*, 89 F.4th at 140; *see Baroni v. Port Auth. of N.Y. & N.J.*, 161 F.4th 48, 62 (2d Cir. 2025). The premise here was mistaken twice over. First, counsel did proffer facts: that Singer and Kosinski invited Gray to co-write the screenplay, held extensive story meetings with him, read and praised his scenes, and incorporated them into the screenplay. A-111. Second, the court required an allegation that Singer and Kosinski told Gray "we want you to be joint author." A-112. Co-authorship has never required that. "[J]oint authorship can exist without any explicit discussion of this topic by the parties." *Childress*, 945 F.2d at 508.

Amendment would not be futile. Paramount contends that Gray has offered no new factual allegations. Resp. Br. 57. But its own Statement of the Case supplies them. According to Paramount's recitation of Gray's account, Singer asked Gray "to develop and write the screenplay … with him as a writing team." Resp. Br. 6. Singer "guaranteed [Gray] would be credited for [his] writing." Resp. Br. 7. As the draft neared completion, Gray "believed it was time to notify the Studio and put both of our names on the script." *Id.* The Complaint did not allege Singer and Gray's credit agreement. Gray may specify these facts on appeal. *APP Grp. (Canada) Inc. v. Rudsak USA Inc.*, No. 22-1965, 2024 WL 89120, at *4-5 & n.1 (2d Cir. Jan. 9, 2024) (summary order) (vacating futility-based denial of leave where plaintiff specified its amendments in its reply brief).

Discovery added more. Kosinski told Singer and Gray, "if Tom signs up, I want you guys to write it." A-523, 541. Singer texted Gray, "wanna bring u on." A-616. Singer directed Gray to "check and merge tweaks u agree with." A-613. These facts go directly to the indicia this Court examines: how the collaborators agreed to be credited and who decided what went into the draft. *Thomson*, 147 F.3d at 202-04. Each can be pleaded now.

Paramount's cases are far afield. In *Wilson*, the complaint "had already been amended once" and then "again." *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 139 (2d Cir. 2011). In *Horoshko*, the appellants failed "to disclose what additional allegations they would make." *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004). Gray has disclosed them. At a minimum, the dismissal of Gray's joint-authorship and accounting claims with prejudice should be vacated with instructions to grant leave to amend.

## CONCLUSION

The Court should reverse the judgment, reinstate Gray's copyright-infringement claim, and reverse the dismissal of his joint-authorship and accounting claims or, at a minimum, vacate that dismissal with instructions to grant leave to amend.

Dated: October 26, 2026. Respectfully submitted,

*/s/ Marc Toberoff*
Marc Toberoff
TOBEROFF & ASSOCIATES, P.C.
23823 Malibu Road, Suite 50-363
Malibu, California 90265

*Counsel for Plaintiff-Appellant Shaun Gray*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7) and Second Circuit Local Rule 32.1(a)(4). Excluding the parts exempted by Federal Rule of Appellate Procedure 32(f), it contains 6,996 words. This brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Dated: October 26, 2026.

*/s/ Marc Toberoff*
Marc Toberoff

# **CERTIFICATE OF SERVICE**

I certify that on the date set forth below, the foregoing brief was filed with the Clerk of the Court using the CM/ECF system, which will serve a notice of electronic filing on all counsel of record.

Dated: October 26, 2026.

*/s/ Marc Toberoff*
Marc Toberoff